Herman A. "Chuck" Watson III
Megan M. Moore
WATSON LAW OFFICE, P.C.
101 East Main Street, Suite C
Bozeman, Montana 59715-4796
Telephone: (406) 586-4707
Facsimile:(406) 582-0836
Email: megan@watlawoffice.com

Attorneys for Defendant,
    *Vincent Harry Kopacek*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION
* * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>VINCENT HARRY KOPACEK<br><br>Defendant. | Cause No. CR-21-26-BU-DLC<br><br><br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

COMES NOW, the Defendant Vincent Harry Kopacek, by and through his counsel Herman A. "Chuck" Watson III and Megan M. Moore of Watson Law Office, and hereby respectfully submits the following memorandum for the Court's consideration at sentencing on June 1, 2022.

# I. INTRODUCTION

Pursuant to a plea agreement with the United States, Vincent Harry Kopacek. (hereinafter "Vince") pled guilty to the Superseding Information in this matter, which charges the crime of abusive sexual contact, in violation of 18 U.S.C. § 2244(a)(3). See also 49 U.S.C. § 46506 (1) (an individual on an aircraft who commits an act that would violate chapter 109A of title 18 shall be fined/imprisoned under the title 18 section). Doc. 31. This offense carries a maximum punishment of two years imprisonment, a $250,000 fine, one year of supervised release, and a $100 special assessment fee. Vince also understands that unless the Sentencing Court finds the defendant to be indigent, an additional mandatory special assessment of $5,00 will be imposed. 18 U.S.C § 3014 (JVTA). In exchange for Vince's guilty plea to the Superseding Information, the Government will move to dismiss Counts I and III at sentencing pursuant to the Plea Agreement. Doc. 31.

The Plea Agreement also specifies that the appropriate base offense level will be decreased by two levels for acceptance of responsibility, pursuant to USSG §3E1.1(a), unless the defendant is found to have obstructed justice prior to sentencing, pursuant to USSG §3E1.1, or acted in any way inconsistent with acceptance of responsibility. The United States will move for an additional one-level reduction, pursuant to USSG §3E1.1(b), if appropriate under the Guidelines.

Additionally, Vince has been advised and understands that under the Sex Offender Registration and Notification Act he must register and keep the registration current in the location of his residence and the location of his employment. Vince understands that registration must be updated no later than three business days after any change of name, residence, employment, or student status. He understands and acknowledges that information must be provided relating to any intended travel outside the United States. 42 U.S.C. § 16914. He understands that failure to comply with these obligations subjects him to prosecution for failure to register under federal law 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

The Presentence Investigation Report ("PSR") determined Vince's base offense level to be 18 and the total offense level to be 15 after applying the acceptance of responsibility adjustment under USSG §3E1.1(a)). PSR ¶ 26 – 36. With no prior criminal history, Vince's criminal history category is I. PSR ¶ 40-41. His is guideline imprisonment range is 18 to 24 months. PSR ¶ 67. A sentence of imprisonment is not required.

The fine range for this offense is from $7,500 to $75,000. PSR ¶ 76, USSG § 5E1.2(c)(3). Vince agrees that pursuant to 18 U.S.C. § 3663A, restitution shall be ordered in the requested amount of $343.04. PSR ¶ 79. The statutory term of supervised release is not less than five years to life. USSG §5D1.2(b)(2), PSR ¶ 71.

The Court has the authority to vary further downward pursuant to the 18 U.S.C. § 3553(a) factors and any applicable USSG provision.

## II.  SENTENCING MEMORANDUM

### A. Unresolved PSR Objections

Vince's objections to the PSR are accurately reflected in the document and Addendum. The most notable of those objections refers to the enhancement to the base offense level as calculated in ¶ 27. The enhancement is based upon alleged conduct dismissed pursuant to the Plea Agreement but included in the PSR as Relevant Conduct. Vince agrees with the legal standard presented by the Government in its Sentencing Memorandum (Doc 62) – essentially, because the facts of the "Relevant Conduct" are in dispute, the government must prove the disputed facts by clear and convincing evidence in order for the enhancement to be applied. *Id.* at 4, *United States v. Jordan*; 256 F.3d 922, 930 (9th Cir. 2001). Vince also agrees that the enhancement results in an extremely disproportionate impact upon the guideline range. *Id.*

Vince does not admit to the conduct supporting the enhancement (that he attempted to put his hand in the victim's underwear). That is the reason he did not plead guilty to Count I or Count III of the Information. However, with the filing of the Government's Sentencing Memorandum, he realizes that the effect of his objection is that the victim will be required to testify as to those allegations. One of

the primary drivers behind every decision Vince has made in this case is the desire to spare everyone involved, the victim foremost, from having to relive that day. Maintaining his objection to the application of the enhancement will thwart that purpose.

For that reason, Vince withdraws his objection as to the calculation of the base offense level. The objections noted in the Addendum to paragraphs 27, 36, and 67 are withdrawn. Vince denies attempting to place his hand in the victim's underwear and maintains that the Government could not convict him of such conduct. However, he concedes that the conduct is alleged, that the victim would testify to the same, and that there is legal precedent for the allegation to be considered Relevant Conduct under USSG § 1B1.3. He acknowledges that would result in the application of USSG § 2A3.4(c)(2) and does not challenge the same.

### B. Sentencing Analysis

Courts have broad discretion to consider every unique aspect of each case and each defendant when fashioning an appropriate sentence. The United States Supreme Court has emphasized that Congress "could not have been clearer" in drafting 18 U.S.C. § 3661, which directs that "'no limitation . . . be placed on the information concerning the background, character, and conduct' of a defendant that a district court may 'receive and consider for the purpose of imposing an appropriate sentence.'" *Pepper v. United States*, 562 U.S. 476, 490-491 (2011) (quoting 18

U.S.C. § 3661). A careful consideration of the factors enumerated in 18 U.S.C. § 3553(a) supports a downward departure from the Guideline range, and the imposition of supervised release for a period of five years.

The Guideline range calculated per the USSG is only one of the § 3553(a) factors. "While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account when arriving at an appropriate sentence." *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009) (quoting *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)). The Guidelines factor may not be given more or less weight than any other of the § 3553(a) factors. *Id.* "So while the Guidelines are the 'starting point and initial benchmark' and must be 'kept in mind throughout the [sentencing] process,' the Guidelines range constitutes only a touch-stone in the district court's sentencing considerations." *Id.* District courts "must consider both the seven § 3553(a) factors and the Guidelines when imposing sentence." *Id.*

A sentencing court has the discretion to depart downward from the Guidelines if it finds "mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." *United States v. Brown*, 985 F.2d 478, 481 (9th Cir. 1993) (quoting *United States v. Lira-Barraza,* 941 F.2d 745, 746 (9th Cir. 1991) (*en banc*)). Sentences imposed "outside the Guidelines are

subject to the same standard – i.e., abuse of discretion – as those within the Guidelines." *Id.* (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)). "The Supreme Court has emphasized that 'extraordinary circumstances' are not a prerequisite to upholding a sentence outside the Guidelines." *Autery*, 555 F.3d at 872 (quoting *Gall*, 552 U.S. at 47.) The court may depart downward if mitigating circumstances are present, but those circumstances need not be "extraordinary."

The primary directive of § 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the following purposes:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A) – (D). In addition to the USSG and the § 3553(a)(2) factors above, sentencing courts must also consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; any pertinent policy statement; the need to avoid unwarranted

sentence disparities among defendants with similar records; and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1), (3), (5) – (7).

Vince respectfully submits that the Court consider, in particular, the following factors and mitigating circumstances in determining the type and length of sentence that is sufficient, but not greater than necessary:

**18 U.S.C. § 3553(a)(1): The Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

Vince Kopackek is a 76-year-old rancher and Air B&B manager who lives in Texas. This Court will read the accounts of many of Vince's close friends and family members, all of whom describe Vincent with love, appreciation, and admiration. *See* Notice of Filing Sentencing Letters, Doc. 63. They describe the integral role Vince has played for others throughout his life, through his caring nature, generosity, faith, family, and contributions toward bettering his community. Vince has no criminal history.

On July 8, 2021, Vince boarded a flight from Austin, Texas to Bozeman, Montana. His son Chris had invited him on the trip, along with Vince's other son Kyle. Vince shouldn't have been traveling. Just days prior, he had undergone major surgery. He was still experiencing intense pain and swelling in his groin area as a result. He was taking Hydrocodone, prescribed by his surgeon to manage this pain – the dosage prescribed was one 300 mg tablet every six hours. That day, Vince had taken one Hydrocodone tablet between 12:30 and 1:00 p.m. On the way to the airport

in anticipation of an uncomfortable flight, Vince took another Hyrdocodone tablet between 2:30 and 3:30 p.m. He placed two more Hydrocodone tablets in his pocket to take later, so that he wouldn't have to access the bottle in his backpack while traveling.

Also in his pocket Vince had placed his regularly prescribed medications for high blood pressure, heart arrythmia, and bladder control. He always took these medications at 5:00 p.m. The flight was scheduled to depart around 5:30 – 6:00 p.m., and Vince wanted to make sure he had the medications on hand. The flight was delayed slightly, and when the 5:00 reminder alarm went off on Vince's phone, he grabbed all of the pills in his pocket and took them with water. He had forgotten he had placed the two extra Hydrocodone in the same pocket. He mistakenly took two extra doses of Hydrocodone 2 ½ - 3 ½ hours sooner than the recommended dosage.

Vince is not claiming that the medication diminished his ability to understand what he was doing on that flight. He is not claiming that the medication provides a defense to the crime to which he has pled guilty. It does, however, explain why Vince was absolutely not himself that night. It explains how someone with no history of criminal behavior or deviant sexual behavior whatsoever in seven-plus decades of life suddenly touched another person, a minor, without her consent.

Vince cannot explain his decisions and actions on that flight. It the opinion of his friends and family, as well as the undersigned, that Vince is as shocked as anyone

that he committed this act. That does not negate the effect upon the victim, and Vince is the first to acknowledge the harm he has caused. Vince is a man of devoted faith, and he is sincere when he says that he has attempted to atone the best way he knows how. Vince and several others who know him well have detailed his prayers for the victim's well-being.

**18 U.S.C. § 3553(a): Restitution**

Vincent has agreed to and will be held responsible for complete restitution as requested in this case.

**USSG 5H1.1**

USSG 5H1.1 provides that age may be relevant in determining whether a departure is warranted, particularly in combination with other offender characteristics, if it serves to distinguish the case from those typically covered by the guidelines. "Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally as efficient and less costly than incarceration." *Id.*

Vince is 76 years old. He uses a CPAP machine to sleep every night and has been doing so for ten years. He takes a host of medications for conditions including high blood pressure, bladder issues, and hearth arrythmia, for which he has a pacemaker. He has glaucoma, for which he takes three different eye drops daily and

is losing his vision. His health needs to be continuously monitored. A custodial sentence would greatly jeopardize his ability to monitor and maintain his health.

**18 U.S.C. § 3553(a)(2)**
- **(A)** **to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
- **(B)** **to afford adequate deterrence to criminal conduct;**
- **(C)** **to protect the public from further crimes of the defendant; and**
- **(D)** **to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Vince has been subject to home detention, with exceptions since July 14, 2021. Doc. 10, 58. For almost a year he has had little to no social interaction, he has not been able to attend the church services and group meetings that were vital to him in his prior life, and he his family has detailed how his once gregarious personality has become withdrawn, timid, and depressed. He has lost he ability to pursue his only active source of income, a payment processing business that required him to call on local restaurants and businesses. He has seen a slew of news articles published about him, with facts both true and untrue. His already precarious marriage has completely deteriorated. He will register as a sex offender for likely the remainder of his life.

Vince has felt acutely the consequences of his actions. He has learned through supervision to respect the law and to take responsibility for himself. He is deterred from committing further crimes. Vince's history demonstrates that this was an isolated incident, and that he is not a danger to the public. He has never committed

a sexual offense and has shown no signs of deviant sexual proclivities. His needs can be met with supervision, and will be best served by the opportunity to slowly reunite with his family and church community who have demonstrated their willingness to continue supporting Vince.

### III. CONCLUSION

Vince knows the chapter that began on that flight will never fully be closed, and that his family, the victim, and her family will live with the events of that night forever. He is nevertheless eager to move on, and hopes that his guilty plea and sentencing affords the opportunity for all involved to do so. He respectfully requests that the Court consider the above factors and circumstances in crafting a sentence that is sufficient but not greater than necessary.

Respectfully submitted this 20th day of May, 2022.

By:/s/ Megan M. Moore
Megan Moore
Attorney for Defendant

# **CERTIFICATE OF SERVICE**

I hereby certify that on 20th day of May, 2022, I served a true and correct copy of the foregoing document via the following means to the following:

1. Cyndee Peterson
   Assistant United States Attorney
   Method of Service: CM-ECF

2. Clerk, United States District Court
   Method of Service: CM-ECF

3. Vincent H. Kopacek
   Method of Service: Mail

By: _/s/ Megan M. Moore_____